UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ELIZABETH ANN BROOKS,                              :

                 Plaintiff,                 :
                                                    OPINION AND ORDER
      -v.-                                         :        21 Civ. 6453 (GWG)

KILOLO KIJAKAZI,                                   :

                Defendant.                  :
-----------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Elizabeth Anne Brooks brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the March 30, 2021 decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act").  Both parties have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1]  For the reasons that follow, Brooks's motion is denied, and the Commissioner's cross-motion is granted.

I.    BACKGROUND

    A.    Procedural History

On March 10, 2015, Brooks filed for DIB, alleging that she was disabled due to "chronic migraine disease," "anxiety," and "clinical depression associated with chronic migraines."  SSA Admin. Record, filed Dec. 27, 2021 (Docket # 10) ("R."), at 363, 1000.  On April 23, 2015, Brooks's claim was denied, R. 60, and Brooks subsequently requested a hearing before an

[1] Plaintiff's Memorandum of Law in Support of a Motion for Judgment on the Pleadings, filed Sept. 26, 2022 (Docket # 25) ("Brooks Mem."); Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings and in Support of the Commissioner's Cross Motion, filed Dec. 6, 2022 (Docket # 29) ("Comm'r Mem.").  Brooks did not file a reply to the Commissioner's brief.  See Letter from J. Anklowitz, filed Dec. 8, 2022 (Docket # 31).

Administrative Law Judge ("ALJ").  R. 64.  On April 26, 2018, Brooks appeared with counsel at

an in-person hearing and gave testimony.  R. 684.  In a decision dated May 23, 2018, the ALJ

issued a decision finding that Brooks was not disabled.  R. 10.  Plaintiff filed a request for review

by the Appeals Council, and on April 25, 2019, the Appeals Council denied the request.  R. 1.

      Plaintiff filed a civil action in this District challenging the Commissioner's finding.

Brooks v. Comm'r of Soc. Sec., No. 19-cv-6127.  On July 13, 2020, the court issued a stipulation

and order remanding the matter to the Commissioner.  R. 805.  On September 25, 2020, the

Appeals Council issued an order remanding the matter to the ALJ with instructions for further

action.  R. 806.  Plaintiff once again appeared with counsel at telephonic hearing on February 22,

2021.  R. 755.  On March 30, 2021, the ALJ again issued a finding that Brooks was not disabled.

R. 736, 744.  On July 29, 2021, Brooks filed this action challenging the ALJ's decision.

Complaint, filed July 29, 2021 (Docket # 1).

      B.      The Hearings Before the ALJ

      In brief, at her 2018 hearing, Brooks testified that between 2008 and 2010, she suffered

from dizziness and incapacitation due to migraines.  R. 694-95, 711-15.  She testified that she

was treated initially by a neurologist who was not helpful, R. 695, after which she was referred to

Dr. London for treatment, id.  She testified that at the end of 2010, she consulted with the

Montefiore clinic for her headaches, R. 697-99, specifically Dr. Napchan.  R. 702.  She testified

that she normally consulted Dr. Napchan for emergency medicine when her migraines required

treatment.  R. 703-04.  Brooks also testified that she began seeking treatment for diagnoses of

depression and anxiety in 1999 from Dr. Tarle.  R. 704-05.  She testified that she had been

"seeing Dr. Tarle for over 20 years."  R. 705.  She testified that her treatment consisted of

medication, but that much of her depression medication could not be taken concurrently with her

migraine medication.  R. 705-06.  She testified that she had monthly sessions with Dr. Tarle.  R.

707.  She stated that she had requested treatment records from Dr. Tarle, and "asked him to do a

search and he did, and he didn't have them."  R. 706.

At the 2021 hearing, medical experts Dr. Pollack and Dr. Miller testified, along with

Brooks and Vocational Expert Linda Stein.  R. 754.  Brooks testified that her headaches became

"extremely bad" starting in 2008 and that they occurred "almost every day" between 2008 and

2010.  R. 782.  She testified that she had seen Dr. Tarle for depression beginning in 1998 and her

diagnosis "turned out to be a little bit of both . . . depression[] and . . . migraine."  R. 787-88.

Brooks testified that between 2008 and 2010, she had to lie down for 75 percent of the time she

was awake.  R. 792.

C.    The Medical Evidence

Both Brooks and the Commissioner have provided detailed summaries of the medical

evidence.  See Brooks Mem at 4-6; Comm'r Mem at 3-8.  The Court had directed the parties to

specify any objections they had to the opposing party's summary of the record.  See Scheduling

Order, dated Dec. 28, 2021 (Docket # 11), at ¶ 5.  Neither party has done so.  Accordingly, we

adopt the parties' summaries of the medical evidence as accurate and complete for the purposes

of the issues raised in this suit.  We discuss the medical evidence pertinent to the adjudication of

the instant case in Section III below.

D.    The ALJ's Decision

The ALJ found Brooks to be not disabled in a decision dated March 30, 2021.  See R.

735-44.  Following the five-step test set forth in the Social Security Administration ("SSA")

regulations, the ALJ found that Brooks "last met the insured status requirements of the Social

Security Act on September 30, 2010" and "did not engage in substantial gainful activity during

3

the period from her alleged onset date of January 15, 2008 through her date last insured of

September 30, 2010." R. 737. At step two, the ALJ found that Brooks had the "severe

impairment" of migraine headaches, but that her allegations of depression and anxiety "[did] not

rise to the level of a medically determinable impairment." R. 738. At step three, the ALJ found

that Brooks "did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix

1." R. 738-39.

Before moving on to step four, the ALJ assessed Brooks's residual functional capacity

("RFC") for the relevant period. R. 739. The ALJ found that Brooks "had the residual

functional capacity to perform light work" but could "sit for eight hours, stand four hours total

and one hour at a time, walk for two hours total and thirty minutes at a time[,]" "must avoid

ladders, ropes, scaffolds, extreme temperatures, humidity, hazardous machinery and unprotected

heights[,]" and "[was] limited to moderate noise levels and moderate lighting level . . . and

would miss one day of work per month." Id.

At step four, the ALJ found that Brooks "was capable of performing past relevant work

as a Teacher" because "[t]his work did not require the performance of work-related activities

precluded by the claimant's residual functional capacity." R. 742. At step five, the ALJ found

that "[i]n addition to past relevant work, there were other jobs that existed in significant numbers

in the national economy that [Brooks] also could have performed, considering [her] age,

education, work experience, and residual functional capacity." R. 742. Ultimately the ALJ

determined that Brooks "was not under a disability, as defined in the Social Security Act, at any

time from January 15, 2008, the alleged onset date, through September 30, 2010, the date last

insured." R. 744.

II.   LEGAL STANDARD

A.   Scope of Judicial Review

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Substantial evidence is "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008).  "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (punctuation omitted).  The "threshold for such evidentiary sufficiency is not high."  Id.

As a result, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled."  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012), cert. denied, 570 U.S. 919 (2013).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (punctuation omitted).  In other words, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists."  Johnson v. Astrue, 563 F.

Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds

facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude

otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)

(emphasis in original, punctuation omitted).  "The role of the reviewing court is therefore quite

limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563

F. Supp. 2d at 454 (punctuation omitted).

        B.      Standard Governing Evaluation of Disability Claims by the Agency

        The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A).  A person will be found to be

disabled only if it is determined that her "impairments are of such severity that [s]he is not only

unable to do [her] previous work but cannot, considering [her] age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national

economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

        To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective

evidence of pain or disability testified to by the claimant or others; and (4) the claimant's

educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037

(2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam);

Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating disability claims.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities."  Id. §§ 404.1520(c), 416.920(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the impairments listed, the claimant must be found to be disabled regardless of her age, education, or work experience.  See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(a)(4)(iv).  Fourth, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's residual functional capacity, in addition to her age, education, and work experience, permits the claimant to do other work.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot perform other work, she will be deemed disabled.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The claimant bears the burden of proof on all steps save the final one — that is, on all steps aside from proving that there is other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III.    DISCUSSION

The only issue raised by Brooks is that the ALJ erred by failing to adequately develop the record.  See Brooks Mem. at 1, 11.

Because "Social Security proceedings are inquisitorial rather than adversarial[,] [i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Smith v. Apfel, 530 U.S. 103, 110-11 (2000).  Thus, "whether dealing with a pro se claimant or one represented by counsel, the ALJ must 'develop the claimant's complete medical history.'" Lopez v. Comm'r of Soc. Sec., 622 F. App'x 59, 60 (2d Cir. 2015) (punctuation omitted) (quoting 20 C.F.R. § 404.1512).  "This responsibility 'encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity.'" Craig, 218 F. Supp. 3d at 261 (quoting Pena v. Astrue, 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008)).  Where an ALJ fails to adequately develop the record, remand is generally appropriate.  See id. at 262 (citing Moran v. Astrue, 569 F.3d 108, 114-15 (2d Cir. 2009)).  "However, even where an ALJ fails to develop the opinions of a treating physician, remand may not be required 'where the record contains sufficient evidence from which an ALJ can assess the petitioner's disability.'" Carr v. Comm'r of Soc. Sec., 2018 WL 3410012, at *3 (S.D.N.Y. July 12, 2018) (punctuation omitted) (quoting Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order)).

As Brooks notes, Brooks Mem. at 13, when her case was remanded to the ALJ, the Appeals Council identified a gap in the record regarding Brooks's treatment by Dr. Tarle and instructed the ALJ to "request a medical source statement from Dr. Tarle."  See R. 809.  A copy of the ALJ's request to Dr. Tarle does not appear in the record, but the ALJ's decision indicates that he asked Dr. Tarle for "records and a medical source statement."  R. 738.  Dr. Tarle responded by stating that Brooks was under his care "from 1998 through 2011," and that Brooks's "records from 1998-2011 were destroyed."   R. 1078.

Brooks argues that the ALJ should have contacted Dr. Tarle a second time "to obtain more information as to treatment and obtain a medical source statement." Brooks Mem. at 13-14. She argues that the ALJ's decision turned on the absence of treatment records, and contends that these records were absent only because the ALJ failed to develop the record. Id. at 14.

Dr. Tarle's response to the request for a medical source statement by itself strongly suggests that any re-contact would have had the same result and that he was simply unable to complete a medical source statement in light of the absence of records. And we might find that the ALJ fulfilled the duty to develop the record based on Dr. Tarle's response alone. As case law reflects, an ALJ does not have a duty "to seek additional evidence from a treating physician if the ALJ 'know[s] from experience that the [physician] either cannot or will not provide the necessary evidence.'" Ecker v. Colvin, 2016 WL 3676674, at *8 (S.D.N.Y. July 6, 2016) (quoting 20 C.F.R. § 404.1520b(c)(1)). In his opinion, the ALJ noted that "Dr. Tarle submitted a letter dated February 9, 2021, which elaborated that claimant was under his psychiatric care from 1998 through 2011, however, those records were destroyed." R. 738. Here, the ALJ could have used his experience to find that a repeated request would be pointless.

It is not necessary to rely on these principles to account for the ALJ's actions, however, since there was other evidence in the record to support the notion that any re-contacting would have been pointless. Brooks' counsel had himself requested a "medical source statement" from Dr. Tarle and was told by Dr. Tarle's office on February 10, 2021, that Dr. Tarle "[did] not remember the patient's case to do a medical source statement." R. 1019. Based on this evidence, submitted by Brooks's counsel, the ALJ had every reason to believe that Dr. Tarle could not provide a medical source statement or provide live testimony regarding Brooks's treatment, and that to contact him once again would have been fruitless.

Brooks contends that, in the alternative to contacting Dr. Tarle, the ALJ should have questioned Brooks as to whether her "depression and anxiety" affected her performance on the so-called "paragraph B criteria."  See Brooks Mem. at 15-16.  The paragraph B criteria provide that a claimant may be found disabled if the claimant has one "extreme" or two "marked" limitations in four broad areas of mental functioning, consisting of "understanding, remembering, or applying information," "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself."  See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.00(G)(1).  We find no fault in the ALJ's questioning of Brooks, however, since the ALJ specifically asked Brooks if her depression and anxiety affected her ability to work.  R. 704-705.  Brooks answered that question at length.  R. 705-07.  When asked if "there [was] anything else that [she] want[ed] to tell [the ALJ] regarding [her] inability to work during that time period," Brooks replied that there was not.  R. 709.  There is no requirement that an ALJ specifically ask about the four areas of mental functioning in order to assess a claimant's assertions about the effect of a mental condition on her ability to work.  In any event, when asking about the relevant period, the ALJ also questioned Brooks as to whether she was "having any problems getting along with others," R. 689, and probed whether she had "any other conditions, as of that time, that were affecting [her] ability to work."  R. 708.  The ALJ questioned Brooks regarding her ability to conduct daily activities, R. 687-692, and ultimately found that she "was independent with her personal care."  R. 742.  These questions were sufficient to meet the ALJ's duty to develop the record regarding the effects of Brooks's depression and anxiety on her ability to work.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, Brooks's motion for judgment on the pleadings (Docket # 24)

is denied, and the Commissioner's cross-motion (Docket # 28) is granted.

SO ORDERED.

Dated: January 27, 2023
       New York, New York


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

11